Filed 7/15/26  In re R.M. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re R.M., et al., Persons Coming Under the Juvenile Court Law. | B345917 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 24CCJP00844A-C) |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION |
| v. | [NO CHANGE IN JUDGMENT] |
| C.H., | |
| Objector and Appellant. | |

It is ordered that the caption page of the opinion filed on July 2, 2026, is modified as follows:

Delete "Defendant and Appellant" in the caption and replace it with "Objector and Appellant"

Delete "Caree Harper, in pro. per., for Defendant and Appellant" and replace it with "C.H., in pro. per., for Objector and Appellant."

There is no change in judgment.

_____
BAKER, Acting P. J.          MOOR, J.          KIM, J.

Filed 7/2/26  In re R.M. CA2/5 (unmodified opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re R.M., et al., Persons Coming Under the Juvenile Court Law. | B345917 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.H., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 24CCJP00844A-C) |

APPEAL from orders of the Superior Court of Los Angeles County, Tara Newman, Judge.  Affirmed.

Caree Harper, in pro. per., for Defendant and Appellant.

Dawyn Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Principal Deputy County Counsel, for Plaintiff and Respondent.

Former foster parent C.H. appeals from the juvenile court's denial of her petition for a change of the court's order that had removed Roy. M. (Roy), Ri. M. (Ri), and Rob. M. (Rob) (collectively, Minors) from her care.[1] We are primarily asked to decide whether the juvenile court reversibly erred by declining to admit most of C.H.'s documentary evidence, excluding most of her proposed witnesses, and denying continuances of the hearing.

## I. BACKGROUND

### A. *Dependency Jurisdiction*

Twice in January 2024, father R.M. (Father) repeatedly hit mother M.M. (Mother), who was pregnant, while in the presence of Roy and Ri. Also in January 2024, Father drove Roy and Ri in

---

[1] Because C.H. is not a party in the underlying dependency case, her access to the juvenile court case file is limited by the California Rules of Court. The juvenile court granted C.H. access to certain redacted portions of the clerk's transcript and the reporter's transcript from the hearings on February 13, 2025, and March 4, 2025. C.H. later sent a letter to the juvenile court asserting that portions of the record were missing. The juvenile court declined to allow her access to any other documents.

C.H. subsequently moved to augment the record on appeal. This court granted her motion as to certain documents filed in the juvenile court, denied it as to other documents, and deferred the decision on additional exhibits to this panel. We grant the motion as to Proposed Augmented Exhibit 15 and pages one through five of Proposed Augmented Exhibit 16 to C.H.'s October 28, 2025, "supplement" to her motion to augment the record (i.e., C.H.'s post-judgment request for special transcript and C.H.'s proposed exhibit list filed in the juvenile court), but deny the request as to Proposed Augmented Exhibit 17 because it is irrelevant to the disposition of this appeal.

a car without properly securing them in safety seats; Mother was also in the car. Minors were removed from Father and Mother in July 2024. The juvenile court ultimately sustained a five-count dependency petition based on these events.

### B. Minors are Placed with C.H. and Later Removed from Her Care

Minors were placed with C.H. after being removed from their parents. In September and November 2024, however, the Los Angeles County Department of Children and Family Services (the Department) learned of allegations that Minors were being abused and neglected by C.H. After investigation, the allegations were partially substantiated.

On November 8, 2024, C.H. was given a 14-day notice that Minors would be removed from her care and taken to a new placement because C.H. was struggling with managing all three Minors, especially Ri. According to Department social worker Aura Walker (Walker), C.H. agreed to the notice but she did not sign it. The Department initially agreed to allow C.H. to maintain custody of the children through the Thanksgiving holiday.

The Department changed course on November 19, 2024, however, after C.H.'s babysitter told the Department that C.H. would scream insults and obscenities at Ri close to his face, would often yell at Minors (including in public), and was especially mean and rude to Ri. A Department social worker interviewed Ri and Roy the same day at school. Both disclosed C.H. yelled at them. Ri also reported C.H. would carry him to his room in a way that hurt his body. A teacher at the school reported that Ri and Roy would often say they were not fed

3

enough, that C.H. would scream at Ri in front of others, and that C.H. would sometimes drive to Ri and Roy's school without car seats and yell at them to get out without getting out of the car herself. When Department social workers attempted to speak to C.H. the same day, she refused to let them into her home and put her attorney on the phone.

The following day, the juvenile court issued an order authorizing the Department to immediately move all three Minors to a new placement, which the Department did.

C.    *C.H. Files Petitions to Change the Court's Orders*

Later in November 2024, C.H. filed a Welfare and Institutions Code section 388 changed circumstances petition requesting the court change its earlier order removing Minors from her care.[2] C.H. argued circumstances had changed because: Mother told C.H. she wanted Minors placed with C.H.; C.H.'s father, a special education teacher, was moving in with her to provide individualized support to Ri; a wraparound therapist stated she was pressured by a social worker to accuse C.H. of being uncooperative; and Roy asked C.H. to fight for him. C.H. principally asked the court to order Minors to be immediately replaced in her home and to "investigate" the conduct of social worker Berta Cardenas (Cardenas).

The following month, C.H. submitted another section 388 petition accompanied by her own declaration. That declaration identified several developments that C.H. believed warranted returning Minors to her care, some of which were cited in her

---

[2]    Undesignated statutory references that follow are to the Welfare and Institutions Code.

4

earlier petition. C.H.'s declaration also addressed her earlier refusal to meet with the social worker on the day of the social worker's school visit and asserted she had been in the emergency room earlier that day and was sick. C.H. also submitted a declaration signed by Mother requesting Minors be placed in C.H.'s care.

### D. *The Department's Pre-Hearing Filings*

In January 2025, the Department filed an interim review report and response to C.H.'s requests for section 388 relief. The Department's submission detailed ongoing concerns with C.H. as a caregiver and her inability to provide for Minors' emotional needs.

According to the Department, C.H. was not empathetic toward Ri's emotional needs and early in the placement stated she would not transport Ri to any more appointments due to his behavior.[3] C.H. suggested separating Ri from his siblings until his behavior improved. C.H. was also verbally aggressive with social workers and service providers and failed to promptly respond to urgent calls and emails from the Regional Center regarding services for one of the children. C.H. labeled Ri a "'predator'" or a "'problem'" and resisted the Department's attempts to coach her to reframe her thinking and realize Ri was traumatized from prior experiences.

According to the Department's reporting, Ri's behaviors improved approximately three weeks after Minors were placed in

---

[3] The Department's report asserted C.H. at one point expected Ri to Uber alone or with a social worker to sexual abuse therapy, an hour away.

5

a new home.  Within a month of being placed with new caregivers, Roy and Ri started saying they feel safe, they love their current caregivers, and they want to be adopted by them.

A Department social worker spoke to Roy and Ri in January 2025.[4]  They reported they did not want to return to C.H.'s care and would rather stay in their current placement. When asked why, Ri said C.H. used to yell in his face a lot; Roy similarly stated C.H. yelled at "'us'" a lot and was mean.  Roy and Ri were both making progress and were enjoying school.  The mental health teams working with Roy and Ri reported they continued to thrive and make progress in meeting their respective mental health goals, and that their caregivers were involved, engaged, and open to feedback and suggested interventions.

The Department interviewed Mother in January 2025.  She reported she did not want Minors returned to C.H.  While Mother acknowledged previously signing a declaration for C.H., she said she thought she was doing the right thing, but she had since felt slightly harassed by C.H., who kept tracking her down.

In February 2025, the Department submitted a last minute information report.  The report revealed Mother's partner told a social worker that C.H. paid Mother $100 to sign an affidavit stating Mother would prefer to have Minors live with C.H.  The partner also stated C.H. invited Mother to live with C.H. and Minors as long as Father was not included.  The last minute information report also indicated there was a placement hold on C.H.'s home due to an ongoing investigation.

---

[4]     Rob was too young to provide a statement.

6

*E.     The Section 388 Petition Hearing*

The court ultimately held an evidentiary hearing on C.H.'s section 388 petition, which stretched over two days in early 2025.[5] On the first day, Mother's counsel reported he had been unable to reach Mother, who was not present.  He asked for a brief continuance so he could seek direction from Mother and so she could appear.  The juvenile court overruled the objection, stating Mother had been provided with proper notice.  C.H. did not object.

C.H. attempted to introduce a number of exhibits and to present testimony from a series of witnesses.  The juvenile court declined to admit most of C.H.'s proffered exhibits, concluding they were not relevant to the dispute.  The court stated it would not consider any exhibits pertaining to events that occurred prior to the removal of Minors from C.H.'s care.  It ultimately admitted only one proffered exhibit: a parenting certificate.[6]

---

[5]     During the hearing, the juvenile court said the November petition was no longer operative and the hearing was formally on C.H.'s later-filed December 2024 petition.  The court also denied C.H.'s request to be deemed Minors' presumed or de facto parent and that determination is uncontested in this appeal.

[6]     We have augmented the record with C.H.'s proposed exhibit list, which identifies most of the exhibits that the court excluded at the hearing, but C.H. has not arranged for transmission of many of these exhibits to this court.  Most of the exhibits identified on the list appear to be filings from the dependency matter, communications with the Department, and communications between C.H. and others involved in caring for Minors, all of which predate Minors' removal from C.H.'s care on November 20, 2024.  The remaining exhibits are described as an expert report, an undated article discussing preschool expulsions,

7

The court also sustained Minors' relevance objections to twelve of C.H.'s proposed witnesses, including social worker Cardenas, wraparound therapist Raquel Sanchez, and expert Bobby Cagle (Cagle), who was represented to be a prior director of the Department. After the court asked C.H. who two of the proposed witnesses were, C.H. represented one was former babysitter Andrea Weatherby (Weatherby) and C.H. withdrew her request to call the other witness. The court ruled it would allow testimony only from C.H., Weatherby, social worker Walker, and supervising social worker Allen Kuan (Kuan).

During C.H.'s testimony, she described the circumstances under which Minors were initially placed in her home, explaining she was given about two hours' notice before the placement. After hearing some of C.H.'s testimony,[7] the court said everything that happened before the removal was in the reports, and C.H.'s testimony regarding earlier events was repetitive. The court asked C.H. to focus on whether anything had changed since then.

When asked what changed since Minors' removal, C.H. said her father, a retired teacher who has 60 graduate units of special needs instruction, moved to California and was prepared to provide Ri with round-the-clock, one-on-one counseling in C.H.'s home. Though he had been available to C.H. over the phone during the Minors' earlier placement, he was not available for video calls until October and he had not been available in person.

_____

and a letter from another foster parent who spent time with C.H. and Minors voicing her support for returning Minors to C.H.'s care.

[7] There were a number of sustained relevance objections during her testimony.

8

C.H.'s brother also moved nearby, and her sister was planning to move as well. When asked how her parenting style would be different if Minors were returned to her care, C.H. said she would adjust her physical posture when talking to Minors, including by stepping back so no one would think she was getting in someone's face. She also said she would try to redirect Minors from certain behaviors rather than just taking away tablets.

C.H. said she had taken a parenting class and learned different options for reacting to different situations. C.H. said if Minors were returned to her, she would deal with their trauma by being less shocked and having a more tempered response. C.H. admitted there were times her cooperation with the Department broke down and said she could learn and do better. C.H. also expressed her love for Minors and conceded there were things she could have handled better.

There was a multi-day break in the proceedings after the first day of testimony, and the Department filed a last minute information report in the interim. The report advised Ri had been replaced into a different foster home, while Roy and Rob remained in the home in which the three had been placed following their removal from C.H. According to the report, Ri's behavior had progressively worsened since the last hearing, possibly due to Mother's sporadic visits, his psychiatrist's decision to take him off medication, or a visit by law enforcement responding to an anonymous report the children were not being properly supervised. This worsening behavior included an incident in which Ri lunged at one of the caregivers while she was lying in bed, grabbed her neck, and threatened to kill her. Ri also screamed at his caregivers that evening until 9 p.m., during which time Roy was physically distressed. Ri was placed with

9

different caregivers who were willing to let Ri continue attending the same school as Roy and willing to help maintain the sibling bond.

When the section 388 hearing reconvened, C.H. represented herself (she had been represented by counsel previously). At the outset of the proceedings, C.H. informed the court she had been hit by a car the day before, but she did not ask to continue the hearing.

Kuan testified re-placing Minors with C.H. was not in their best interests, in part because she yelled at Roy and Ri and because she was verbally aggressive with social workers and service providers. Social worker Walker testified she initially thought C.H. was doing a good job with Minors and she gave C.H. the benefit of the doubt for as long as she could because this was a complex case. Walker testified, however, that every person involved in the case encountered issues with C.H. and with communication, including service providers for Minors. There were also issues with Ri from the beginning of the case, which were becoming unmanageable.[8] Weatherby ultimately did not testify.[9]

---

[8]  The court sustained objections to many of C.H.'s questions for Kuan and Walker on relevance and other grounds.

[9]  There was some confusion on the second day of the hearing regarding whether Weatherby was permitted to testify. Toward the beginning of the hearing, the court stated C.H. represented she was not going to call Weatherby as a witness. C.H. corrected the court, saying she intended to call Weatherby. The court then said, "those are the only witnesses that are allowed from your witness list. Mr. Kuan, yourself, Ms. Weatherby[,] and Ms. Walker." Later in the hearing, after Kuan's testimony was

The juvenile court took the matter under submission at the conclusion of the hearing and subsequently issued a written ruling, which we quote in full: "The [section 388 petition] is denied because the former caregiver [C.H.] has not demonstrated changed circumstances. While [C.H.] steadfastly and convincingly expresses her love for the three children who were placed with her from July 2024 to November 2024, the children were removed on an expedited basis on November 20, 2024. The expedited removal was ordered because [C.H] was not able to provide for the safety and specific emotional and physical needs of the children nor was she making use of resources available to assist the children, and was not making the children consistently available to [the Department]. After a full 388 hearing, including hours of witness testimony, [C.H.] has not shown a change in circumstances, she has not shown insight into the issues that led to the expedited removal of the [M]inors, nor has she made a showing that it is in the [M]inors' best interests to grant the 388 petition. For these reasons the 388 petition is denied."

---

completed, the court stated it was 3:30 p.m., it was not going to continue the matter another day, and Walker was the last witness. The court and C.H. then discussed again whether Weatherby was permitted to testify. The court represented C.H. had said Weatherby would not testify. C.H. replied that she did not. The court replied that C.H.'s former counsel made that representation, but C.H. said she believed the representation was regarding a different witness and began to articulate a request. The court then interrupted C.H. and said she had requested an hour for Walker, the court would grant her 30 minutes. C.H. replied, "Okay." Walker was the last witness called. After Walker's testimony, the court heard argument from counsel and said it needed to bring the proceedings to a close.

11

## II. DISCUSSION

C.H. has not demonstrated reversible error. Even if we assume the juvenile court erred in excluding some of C.H.'s evidence or witnesses, the record does not reveal an adequate offer of proof was made in many respects (Evid. Code, § 354, subd. (a)) and there is no reasonable probability (insofar as we can discern without an adequate offer of proof) the excluded evidence would have established C.H.'s requested relief—namely the return of Minors to her care—was in their best interests. C.H.'s remaining arguments are forfeited either because they are inadequately presented or because they were not raised in the juvenile court.

### A. *Standing*

"Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) An order denying a section 388 petition is an appealable postjudgment order. (*In re K.C.* (2011) 52 Cal.4th 231, 236; § 395, subd. (a)(1).)

In determining who can appeal from a dependency order, "we are required to 'liberally construe the issue of standing and resolve doubts in favor of the right to appeal.' [Citations.]" (*In re C.P.* (2020) 47 Cal.App.5th 17, 26.) "In juvenile dependency proceedings, as in civil actions generally (see Code Civ. Proc., § 902), only a party aggrieved by the judgment has standing to appeal." (*In re Lauren P.* (1996) 44 Cal.App.4th 763, 768; *K.C.*, *supra*, 52 Cal.4th at 236.)

12

The Department, joined by Minors, argues C.H. lacks standing to appeal the denial of her section 388 petition because she is a former foster parent and, as such, has no legally cognizable interest in the placement of Minors.[10] (§ 361.3, subd. (a).) The Department does not dispute, however, that the juvenile court allowed C.H. to file a petition under section 388 seeking a change of the juvenile court's order. Because it does not ultimately affect our disposition of the appeal, we shall assume C.H. has standing to pursue this appeal and we accordingly deny the motion to dismiss it.

B.    *Reversal for Evidentiary Error Is Unwarranted Because There Was No Adequate Offer of Proof and Because C.H. Has Not Demonstrated Any Error Was Prejudicial*

C.H. challenges the juvenile court's exclusion of her proffered evidence including: (1) evidence of events that occurred prior to Minors' removal from her home; (2) testimony from C.H.'s father, which she says would have demonstrated changed circumstances; (3) evidence that Minors' removal from C.H.'s care resulted from fraudulent statements by the Department; and (4) the testimony and report of expert Cagle.[11] She further contends

---

[10]    After the Department and Minors filed their respective respondents' briefs, the Department also filed a motion to dismiss the appeal on standing grounds, in which Minors joined. We deferred the motions to this panel.

[11]    C.H. does not, however, challenge the sufficiency of the evidence to support the juvenile court's ruling based on the state of the evidence admitted at the hearing.

13

the court's evidentiary rulings violated her due process rights. These contentions fail for want of a showing of prejudicial error.

### 1. The record lacks offers of proof and does not include all of C.H.'s proffered exhibits

"A judgment shall not be reversed by reason of erroneous exclusion of evidence unless a miscarriage of justice is shown and it appears of record that '[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means . . .' (Evid. Code, § 354, subd. (a).)" (*In re Mark C.* (1992) 7 Cal.App.4th 433, 443-444.)  So far as the appellate record reveals, C.H. made no offers of proof regarding the witnesses and documents the juvenile court excluded other than Weatherby and, possibly, Cagle.[12]  C.H.'s "[f]ailure to make an adequate offer of proof precludes consideration of the alleged error on appeal."[13] (*Id.* at 444.)

---

[12]  The court initially ruled it would allow Weatherby to testify, though Weatherby ultimately did not (when the court declined to extend the hearing for a third day).  Insofar as C.H. maintains she made an offer of proof as to her proffered expert Cagle because Cagle's report was before the juvenile court, we address the significance of Cagle's testimony (and Weatherby's) *post*.  C.H.'s arguments regarding certain other documentary exhibits also fail for the independent reason that she has not arranged for transmission of all of those exhibits to this court.

[13]  C.H.'s opening brief references a February 2025 pre-hearing status conference at which she claims the juvenile court excluded key evidence and witnesses.  But the record contains neither a transcript of the conference nor any minute order

14

## 2. *On the appellate record provided, any evidentiary error was harmless*

There is no basis for reversal on the record as it stands because C.H. has not demonstrated prejudicial error.  A petitioner under section 388 "'has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' [Citation.]" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.)  In determining whether a section 388 petitioner has made the requisite showing, the

---

memorializing it, and it is C.H.'s burden to provide an adequate record.

C.H. suggests a special transcript request involving the February 2025 hearing was approved but the transcript of the hearing was not produced.  The record does contain a request for special transcript and order C.H. submitted *prior* to the commencement of the evidentiary hearing, which represented she was requesting the transcript of a trial setting dated February 11, 2025, for a "[w]rit."  At C.H.'s request, this court augmented the record with Requests for Special Transcript that C.H. submitted in March 2025, which represented they were being made for purposes of a writ.  Those requests did not ask for the preparation of a transcript from a pre-hearing status conference in February 2025.

C.H. did send a letter to the juvenile court asserting that portions of the appellate record were missing, but that letter does not identify a pre-hearing status conference in February 2025 as missing.  Moreover, and in any case, the juvenile court did not issue a final ruling on the objections to C.H.'s proposed witnesses or exhibits until the first day of the hearing on her section 388 petition, and an offer of proof should have been made at that time—but was not.

15

juvenile court may consider the entire factual and procedural history of the case including "factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.) Errors in juvenile dependency cases, including alleged violations of due process, are examined for harmlessness, and reversal is only warranted "if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error." (*In re Celine R.* (2003) 31 Cal.4th 45, 60; *see also In re L.J.* (2023) 89 Cal.App.5th 741, 754.)

Here, the juvenile court found C.H. did not demonstrate either a change of circumstance or that her proposed modification was in Minors' best interests. We see no basis to conclude it is reasonably probable that any of the excluded evidence would have changed the juvenile court's best interests determination. The only evidence C.H. identifies as relevant to the topic of Minors' best interests was evidence that her father would provide in-home special education assistance to Ri and Cagle's expert opinion.[14] As to the former, C.H. herself testified that her father would live in the home and provide one-on-one services to Ri. That evidence was thus before the court. As to the latter, again, there was no offer of proof about Cagle's testimony. Even looking

---

[14] Based on the offer of proof made at trial, the testimony of Weatherby would have addressed an incident that occurred prior to Minors' removal from her home, not whether the proposed modification would be in Minors' best interests.

to his report as a substitute for such an offer, he was somewhat critical of the Department's actions in this case but he did not opine the court should reconsider its prior order and once again place Minors with C.H. Instead, the most he was able to recommend was that the court consider C.H. "fictive kin" and allow her to have regularly scheduled visits with them. That, obviously, does not establish a reasonable probability of a different result had Cagle been permitted to so testify.

C.H. additionally argues the juvenile court committed reversible error by failing to consider Minors' sibling bond and the quality of C.H.'s placement after Ri was placed in a different home, away from Roy and Rob. While there is a legislative preference for keeping siblings together, the relevant statute recognizes siblings may be separated where "it has been determined that placement together is contrary to the safety or well-being of any sibling." (§ 16002, subd. (a)(1).) That the juvenile court denied C.H.'s petition after Ri had been moved to a different placement does not establish that the juvenile court did not, in fact, consider Minors' sibling bond in ruling on C.H.'s petition.[15] Without an express indication to the contrary (and

_____

[15]     C.H.'s opening brief includes passing references to Ri's removal from his subsequent placement as the "biggest changed circumstance of all" that the Department "buried it as though they had a bias against [C.H.] . . . ." In her reply brief and at oral argument, however, C.H. argued Ri's removal was a changed circumstance that itself warranted granting her petition. Because C.H. did not develop this argument in her opening brief, it is waived. (E.g., *Old East Davis Neighborhood Assn. v. City of Davis* (2021) 73 Cal.App.5th 895, 915.)

17

there is none), we presume the juvenile court knew and followed the law.  (*In re Julian R.* (2009) 47 Cal.4th 487, 499.)

### C.  *C.H.'s Remaining Assignments of Error Lack Merit*

"An appellant must provide an argument and legal authority to support his contentions.  This burden requires more than a mere assertion that the judgment is wrong.  'Issues do not have a life of their own:  If they are not raised or supported by argument or citation to authority, [they are] . . .  waived.'  [Citation.]  It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness."  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."  (*Badie v. Bank of America (*1998) 67 Cal.App.4th 779, 784-785.)

C.H.'s appellate brief contains a number of assertions that are unsupported by citations to authority or by reasoned argument, such as her complaint that there was not a bonding study below and her assertion that the Department circumvented a September 2024 order.  These unsupported assertions are forfeited.

C.H. also contends the juvenile court reversibly erred by refusing to grant two continuances to Mother and C.H.  These contentions fail because C.H. did not join Mother's request for a continuance (nor did she object to the court's denial of Mother's counsel's request to continue the hearing) and did not request herself a continuance of the March hearing—she instead said only that she had been injured the day before.  (*In re Anthony P.*

(1995) 39 Cal.App.4th 635, 641; *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 603.)

## DISPOSITION

The juvenile court's order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM (D.), J.